## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

ROBERT EMERT,

Plaintiff - Appellant,

V.

LUIS VENA; et al.,

**APPELLANT'S RESPONSE TO COURT'S ORDER OF NOVEMBER 12, 2024**

**No. 24-6057**

**No. 3:23-cv-00230-RSH-AHG**

TO THE HONORABLE COURT:

In response to this Court's order of November 12, 2024 requesting a statement explaining why this appeal is not frivolous, Appellant Robert Emert hereby submits the attached comprehensive statement demonstrating the substantive constitutional issues and evidence warranting appellate review.

**All parties have been served pursuant to the Court's order allowing 10 days for response.**

This case originates from Commissioner Ratekin's improper denial of a timely peremptory challenge on February 8, 2021, despite her undisclosed conflict of interest - her supervising judge's wife worked with and was friends with my ex-wife. Under People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993), this improper denial renders all subsequent orders void ab initio. The void orders then cascaded into retaliatory criminal prosecution after Appellant exposed misconduct as a whistleblower.

The gravity of these constitutional violations is captured in District Attorney Investigator Luis Pena's **recorded admission** that "the DA should never have taken this case" and that prosecution was pursued because family court lawyers were "putting something together"

against Appellant for "pissing them off" by exposing their misconduct. This documented evidence of retaliatory prosecution stemming from void orders demands federal intervention under the Ninth Circuit's precedents requiring district courts to examine evidence of constitutional violations.

The District Court's refusal to consider this evidence and address the jurisdictional void created by the improper peremptory challenge denial warrants reversal. If this Court follows established law regarding void orders from improper peremptory challenge denials, the entire chain of subsequent family and criminal court proceedings must be invalidated.

I respectfully apologize to the Court for the length of the attached statement. However, extensive detail is necessary to fully document the numerous egregious violations of law and acts of moral turpitude by multiple actors who have systematically used the judicial process to inflict harm on my family for profit and retribution. I have been truly terrorized to the point of almost dying of a widow maker heart attack. Only through a comprehensive presentation of the evidence can this Court appreciate the extraordinary nature of these constitutional violations and the urgent need for federal intervention.

Some of the defendants are scrambling trying to declare me as vexatious or frivolous to keep my evidence from being reviewed. I would appreciate this court demanding the review of my evidence, something which the lower courts have refused to do. If someone were to read my docketed U.S Supreme Court case 24-5967, they would quickly see that there appears to be a coordinated effort to simply shut me down and never give me my fair day in court.

In my following statement, I reference my filing of a motion to consolidate related cases and to stay the two cases currently pending with the 9th Circuit to allow for the other related cases to essentially catch up to this court.

Dated: 11/27/24

Respectfully submitted,

Robert Emert Appellant,

Pro Se

2351 Vista Lago Terrace Escondido, CA 92029

(760) 612-9328

robemert@msn.com

**PROOF OF SERVICE**

I, Robert Emert, declare:

I am the appellant in this action and am representing myself pro se. My address is 2351 Vista Lago Terrace, Escondido, CA 92029.

On December 17, 2024, I electronically served the following document:

**APPELLANT'S RESPONSE TO COURT'S ORDER OF NOVEMBER 12, 2024**

on the following parties:

Peter Schluederberg (peter@pqslaw.com) Attorney for Andrea Schuck

Douglas A. Pettit (DPettit@PettitKohn.com) Attorney for Moore, Shulman & Moore, APC

Steven Paul Inman, II (steven.inman@sdcounty.ca.gov) Attorney for Luis Vena

Sara Elizabeth Bloch (sbloch@pettitkohn.com) Attorney for David Schulman

Carmela Duke (Carmela.Duke@sdcourt.ca.gov) Attorney for Judicial Defendants

Austin R. Uhler (austin.uhler@sdcounty.ca.gov) Deputy County Counsel

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 17, 2024 at Escondido, California.

Rob Emert

4

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

NOV 12 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ROBERT EMERT,

          Plaintiff - Appellant,

  v.

LUIS VENA; et al.,

          Defendants - Appellees.

No. 24-6057

D.C. No.
3:23-cv-00230-RSH-AHG
Southern District of California,
San Diego

ORDER

It appears that this appeal may be frivolous. If the appeal is frivolous, the

court will deny permission to proceed in forma pauperis and dismiss the appeal.

*See* 28 U.S.C. § 1915(e)(2).

*Within 35 days*, appellant must:

(1) file a statement explaining why the appeal is not frivolous, OR

(2) file a motion to voluntarily dismiss the appeal, *see* Fed. R. App. P. 42(b).

If appellant files a statement explaining why the appeal is not frivolous, or

any other response other than a motion to dismiss, the court will determine whether

the appeal is frivolous. If it is frivolous, the appeal will be dismissed. If it is not

frivolous, the appeal will proceed.

If appellant files a statement that the appeal should go forward, appellees

may file a response within 10 days after service of appellant's statement.

Briefing is stayed.

If appellant does not respond to this order, the court may dismiss this appeal without further notice.

The clerk will serve on appellant: (1) a form motion to voluntarily dismiss the appeal, and (2) a form statement that the appeal should go forward.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Robert Emert
_____          9th Cir. Case No. ___24-6057___

Appellant(s),


v.


Luis Vena; et al.,
_____

Appellee(s).


## STATEMENT THAT APPEAL SHOULD GO FORWARD
(attach additional sheets as necessary)


1. Date(s) of entry of judgment or order(s) you are challenging in this appeal:
August 14, 2023 - based on the Rooker-Feldman doctrine
September 11, 2024 - The denial for relief from judgment and to amend the complaint _____.


2. What claims did you raise to the court below?

***** SEE ATTACHED *****

3. What do you think the court below did wrong? (You may, but need not, refer to cases and statutes.)

   ******* SEE ATTACHED *****

4. Why are these errors serious enough that this appeal should go forward?

        ******** SEE ATTACHED ******

5.  Additional Information:

     ****** SEE ATTACHED ******

Dated: _____11/27/24_____    _____

                             Print Name(s)

                               Rob Emert
_____

                             Signature(s)

                             Appellant(s) in Pro Se

Dear Clerk of the Court,

This statement is submitted in response to the Courts request dated November 12, 2024, seeking an explanation of why my appeal is not frivolous. Thank you for the opportunity to respond and to be heard.

While this document is long, most of it is in an outline format designed for quick review to simply point out all the main issues on why the lawsuit is not frivolous and why justice, the law and case law demand that my lawsuit be allowed to proceed. This lawsuit is the culmination of over four years of where my life has been terrorized by a few divorce court insiders who have caused me to have a near fatal heart attack, lose my parental rights, lose my retirement account, incarcerate me illegally, and suck me into this never ending legal fiasco where I am truly desperate to escape. It all started when Commissioner Patti Ratekin of the San Diego Superior Court (who improperly denied a valid peremptory challenge) and Dave Schulman (opposing counsel) tried to illegally place my son in a "facility" with zero evidence to do so. Respectfully, I said it was never going to happen and when I tried to provide the court with evidence to this effect, I was railroaded. When I stood up for my Constitutional rights, I was railroaded. When I called out the wrongdoing in whistle blower fashion, I was railroaded to the point of almost dying. Please allow me to have my day in court where I can finally present my evidence where the lower courts have blocked it at every stage.

The following brief summary encapsulates the key aspects of my case, and related cases to be listed at the end of this summary. This brief summary is in more of layman's terms while the following five answered questions the court has asked me to answer are the specific grounds for this appeal with applicable legal citations and grounds:

For two years, under two judges and supported by three Family Court Services reports and two child interviews, I shared 50/50 custody of my children. Then, through a series of documented constitutional violations and fraud upon the court by state actors and officers of the court, I was stripped of my parental rights through void orders stemming from an improperly denied peremptory challenge by Commissioner Patti Ratekin which then cascaded into a criminal case against me. My ex-wife's attorney, David Schulman, engaged in a calculated campaign to strip me of my parental rights and silence my complaints about the injustice my son and I were suffering due to his moral turpitude. Almost everything I say below can be proven with emails, the court record and most importantly, recorded phone conversations. The Southern California District Court is flat out refusing to look at the evidence which is substantial.

On February 4, 2021, Commissioner Ratekin took over my family court case the case with an undisclosed conflict of interest - her supervising judge's wife worked with and was friends with my ex-wife. When I filed a timely peremptory challenge on February 8, 2021, before any orders were made or arguments heard as can be **easily proven by the court record**, Ratekin improperly denied it, setting in motion a chain of void orders that would ultimately lead to my wrongful criminal prosecution.

The chain of void orders stemming from Commissioner Ratekin's improper denial of my February 8, 2021 peremptory challenge directly led to my criminal prosecution:

- February 4, 2021: First hearing with Ratekin, no orders made or arguments heard

- February 8, 2021: Timely filed peremptory challenge denied despite clear rules requiring grant

- February 25, 2021: Ratekin improperly acted as temporary judge despite bar under Rule 2.818

- March 30, 2021: Ratekin stripped parental rights without evidence of unfitness

- September 29, 2021: Suffered heart attack with 6% survival rate

- September 30-November 29, 2021: Denied equal access to the court for four hearings and my trial by Judge Alknse who took over after Ratekin recused despite:

  - Multiple doctors' letters supporting accommodation

  - Offer to have surgeon speak with court while I was in the hospital but calling into the court through MS Teams

  - Standard remote practice during COVID

  - California Rule of Court 3.1332 requiring medical continuance for "good cause"


In San Diego District Attorney Investigator Luis Pena's own words and in an audio recording, he proves retaliatory motives against me, Rob Emert.  DAI Luis Pena says;

"I'm like, why are we even involved in this case? I'm like, we don't take anything over 14.... your home schooling him, right?"

"The big question to me was why did we take this case anyways?"

"Well, just finish the damn warrant and don't worry about it.... You asked me not to reach out to him."

"if this goes to trial, you will likely win"

There are about 30 quotes similar to these that easily prove to any reasonable person that the criminal case is/was a farce and a sham.

Without any evidentiary basis, Ratekin declared her intention to remove my son from my care and place him in a residential facility. On September 29, 2021, I suffered a massive heart attack with only a 6% survival rate. Instead of granting my ADA request for remote appearances - standard practice during COVID - Judge Alksne, who took over the case after Ratekin finally recused herself, denied me access to four hearings and my own trial within a month period, railroading through orders while I was medically incapacitated. She even granted a motion in limine so encompassing that it blocked all my witnesses and evidence from being considered at

that hearing and clearly subsequent appeals. Judge Alksne, who took up the case when Ratekin finally recused herself, disregarded my medical needs and railroaded through orders stripping me of my custodial rights in a massive deprivation of my civil rights and even the most basic of due process and ADA protections.

After Judge Alksne retired, Judge Robinson took over the case and continued to perpetuate the injustice through procedural gamesmanship despite the massive manifest injustice and clear fraud upon the court. Her rulings and statements were often outrageous and contrary to the law. For example, when my son ran away from his mother's home, emotionally distraught, and I faced jail time if the issue was not resolved, Judge Robinson incredulously claimed that this was not an ex parte matter worthy of being heard. Additionally, when I filed a timely motion within the six-month statutory window to have the default judgment examined, Judge Robinson erroneously asserted that I had missed the deadline, demonstrating a shocking bias as I am sure she knows what six months is. While she will play procedure analysis games, the bottom line is that the original motion was within six months and the subsequent amendment to the motion was supplemental in nature. And, there is no time frame for fraud upon the court which is what I have come to see this entire scenario is with still emerging evidence.

Schulman then leveraged his influence with cronies in the District Attorney's office to have me criminally prosecuted for protecting my son, in blatant disregard of the legal protections afforded by California Penal Code 278.7. DAI Pena said on a recorded line that minor Counsel (Matt Cord) had joined up with Schulman to put something together against me and not in my son's best interests! Schulman further exploited his position as a temporary judge in the Department of Child Support Services to sidestep the requirements of Title IV-D, ensuring I could be leveraged and harassed at some future date with a high child support balance that is simply absurd on its face value alone. Two retired Judges have told me that Dave Schulman does this all the time and generally gets away with it due to his extensive San Diego contacts and big checkbook.

The retaliation reached its apex when I was arrested and held in jail without bail for 90 days on the pretext of a "threat" for which I was **<u>never even charged</u>**, in a transparent attempt to silence me and deny me access to justice.

So, this RICO crew snatches my kids, tries to put one of them in a "facility", gives me a heart attack and throws me illegally in jail! All without a basic evidentiary hearing!

The egregious violations of the San Diego District attorney's office (DDA Balerio and DAI Luis Pena) are easily documented by audio recordings and emails and are spelled out in a related lawsuit currently before this court.

District Attorney Investigator Luis Pena admitted in a recorded conversation that the DA 'should never have taken this case' and that I was only prosecuted because I had 'pissed them off' by exposing misconduct. I was illegally detained for 90 days based on a manufactured 'threat' for which I was never charged, while DDA Balerio withheld exculpatory evidence including the full

FBI transcript, her interview with my son and the FBI's "threat assessment" report that she was given.

As I fight to regain my parental rights and hold the wrongdoers accountable, Schulman and his collaborators are desperately trying to label me a vexatious or frivolous litigant to prevent the truth from coming to light and shield themselves from the consequences of their misconduct.

At a bare minimum and considering considerable case law, the Circuit Court should order the lower courts to ultimately grant me the trial I was denied after my heart attack, in light of the clear ADA violations and the fact that Commissioner Ratekin's orders were void due to her unlawful denial of my peremptory challenge. Judge Alksne's subsequent orders, which were based on Ratekin's void orders, are similarly invalid, as they were merely an attempt to cover up the misconduct of Ratekin and Schulman. Consequently, the criminal charges against me, which stem from these void orders, should be dismissed. The Ninth Circuit's authority to issue such instructions to the district court is well-established. For example, in United States v. Hinkson, 585 F.3d 1247 (9th Cir. 2009), the Ninth Circuit, sitting en banc, discussed the standard of review for a district court's factual findings and emphasized the appellate court's power to reverse erroneous findings and remand for further proceedings.

Similarly, in Chapman v. California, 386 U.S. 18 (1967), the Supreme Court held that constitutional errors, such as the violation of a defendant's rights, require reversal unless the error was harmless beyond a reasonable doubt. This principle underscores the appellate court's duty to correct constitutional violations and order appropriate remedies.

My case represents a chilling example of how the family court system can be twisted into a weapon of oppression and retaliation when unethical actors are allowed to operate with impunity. It is a clarion call for oversight, reform, and accountability.

In addition, I would like to respectfully inform the Court of my intention to file a motion to consolidate several related cases that are currently pending before the various lower courts. The cases I intend to consolidate all arise from the same underlying facts and involve the same parties. These cases, which are currently scattered across different courts, all stem from egregious fraud upon the court, due process violations and aggravated by moral turpitude and will be listed at the end of this summary.

Consolidating these related cases would serve the interests of judicial economy, avoid inconsistent rulings, and minimize the burden on the parties and the courts. I anticipate that the lower courts will likely deny relief in the pending cases, which means that they will eventually come before the Ninth Circuit for review. By consolidating these cases and staying the current Ninth Circuit proceedings, the Court can ensure that all related issues are addressed in a comprehensive and consistent manner, avoiding piecemeal litigation and the risk of conflicting decisions. These related cases are listed at the end of this summary.

In the coming weeks, I will be filing this formal motion to consolidate these cases, which will provide a more detailed explanation of the factual and legal basis for consolidation, as well as the

specific relief requested. In the meantime, I respectfully request that the Court refrain from taking any substantive action in the two pending Ninth Circuit cases until the consolidation motion can be filed and considered. Please note that in over four years I have not been granted even one evidentiary hearing which would make my claims apparent to any reasonable person.

In the following document, I have addressed the five specific questions posed by the court, providing detailed and substantial grounds for my appeal. The evidence and legal arguments presented demonstrate that my appeal is not frivolous but raises serious issues of constitutional rights, judicial misconduct, and the need for systemic reform.

I respectfully request that the court consider my appeal and the compelling reasons why it should move forward. Justice demands nothing less.

This case represents more than individual due process violations - it exposes systemic corruption where family court insiders use the criminal justice system to retaliate against parents who challenge their misconduct. The extensive audio recordings, emails, and documentation provide irrefutable evidence of fraud upon the court that demands federal intervention.

**<u>Related cases:</u>**

3:24-CV-00671-JO-MSB – SOUTHERN CALIFORNIA DISTRICT COURT – LAWSUIT FOR ILLEGAL INCARCERATION

S284407 – HABEAS CORPUS – CALIFORNIA SUPREME COURT – TO DISMISS THE CRIMINAL CHARGES FOR SIMPLY LOOKING AFTER MY SON WHO I MOSTLY RAISED AND IN COMPLIANCE WITH PC 278.7.

24-CV-02072-CAB-JLB – SOUTHERN CALIFORNIA DISTRICT COURT – FEDERAL REMOVAL FROM DCSS

24-5856 – 9TH CIRCUIT – LAWSUIT FOR WELCHED PLEA DEAL

24-6057 – 9TH CIRCUIT – THIS LAWSUIT FOR MANY ISSUES BUT MAINLY ADA VIOLATIONS AND FRAUD UPON THE COURT.

24-5967 – SUPREME COURT OF THE UNITED STATES – COORDINATED FRAUD UPON THE COURT TO DECLARE A PRO SE LITIGANT VEXATIOUS OR FRIVOLOUS BEFORE THEY HAVE ANY FAIR DAY IN COURT

Sincerely,

Robert Emert

# 2. What claims did you raise to the court below?

## I. Constitutional Rights Based on Void Orders

The foundation of almost all my claims' stems from Commissioner Ratekin's improper denial of my February 8, 2021, peremptory challenge. Under California Code of Civil Procedure §170.6 and Local Rule 2.1.18, because no orders were made or arguments heard, Ratekin was required to grant the challenge. Her refusal violated due process and rendered all subsequent orders void under People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993).

The Ninth Circuit has consistently held that orders issued without jurisdiction are void and any subsequent proceedings relying on those orders must be vacated. See In re Center Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir. 1985) ("[A] judgment void on its face may be attacked anywhere, directly or collaterally, whenever it presents itself."). The principle that void orders infect all subsequent proceedings was reaffirmed in United States v. Erminger, 638 F.3d 1075, 1081 (9th Cir. 2011), where the court emphasized that actions taken without jurisdiction are "legally ineffective from inception."

The California Supreme Court has established that improper denial of a peremptory challenge creates a jurisdictional defect that voids all subsequent orders. Estate of Eskra (1991) 51 Cal.3d 943. This jurisdictional defect "spreads like a virus" to infect all later proceedings that rely on the void orders. See People v. Peoples, 51 Cal. App. 4th 1592, 1597 (1997).

Critically, this means:

1. All Ratekin's orders after February 8, 2021 are void

2. Judge Alksne's orders building on Ratekin's void orders are also void

3. The criminal prosecution under PC 278.5(a) is invalid as it attempts to enforce void custody orders

4. The entire chain of proceedings stemming from the improper denial must be vacated


Ratekin's claim about a verbal stipulation is legally insufficient to overcome the jurisdictional defect. As held in Church of Scientology v. United States, 920 F.2d 1481, 1487 (9th Cir. 1990), jurisdictional defects cannot be cured by stipulation or waiver. The court transcript confirms:

1. The court transcript shows that on February 4, 2021, Ratekin explicitly stated she "did not have time to hear arguments on this case on this day." No orders were made and no arguments were heard.

2. Under California law and court rules, even if there was a verbal stipulation:

* The right to file a peremptory challenge remains when no substantive rulings have been made

* A verbal stipulation alone does not waive the right to later file a proper challenge

* The challenge was timely filed within 10 days of the first appearance

3. Key precedent suggests verbal stipulation is irrelevant given:

* No substantive proceedings had occurred

* The challenge was properly filed before any orders or rulings

* The stipulation was merely for appearance, not substantive matters

4. My argument is strengthened by:

* The clear record showing no orders/arguments on February 4

* The timely filing of challenge on February 8

* Ratekin's own statement about not having time to hear the case

This case presents a textbook example of what the Ninth Circuit warned against in United States v. Smith, 962 F.2d 923, 935 (9th Cir. 1992): the danger of allowing void orders to spawn further proceedings that compound the original constitutional violation. The improper denial of my peremptory challenge has created precisely this type of unconstitutional chain reaction that the federal courts have both the power and duty to remedy.

For almost two years prior, under two judges and supported by three Family Court Services reports and two child interviews, I shared 50/50 custody. Yet within one month of improperly denying my challenge, Ratekin stripped me of all parental rights without clear and convincing evidence of unfitness as required by Santosky v. Kramer, 455 U.S. 745 (1982).

Judge Alksne then compounded this constitutional violation by pyramiding her orders off Ratekin's void orders. After my near-fatal heart attack (6% survival rate), Alksne denied me access to four hearings and my own trial within a month period, granted a motion in limine blocking all my witnesses, and refused remote appearances that were standard practice during COVID.

II. ADA Violations and Denial of Court Access

The systematic denial of ADA accommodations constitutes independent federal claims under Tennessee v. Lane, 541 U.S. 509 (2004). Despite documented medical necessity after my heart attack, including:

- Letters from multiple doctors

- Offer to have surgeon speak directly with court

- Evidence of recovery from "widow maker" heart attack

- Standard COVID remote practice at the time

The court:

- Denied remote access to four hearings and trial

- Refused continuance under California Rule of Court 3.1332

- Blocked witnesses from testifying through motion in limine

- Entered default judgments during medical incapacity

- Ignored ADA coordinator recommendations

These violations of federal disability law exist independently of any state court judgments and are not barred by Rooker-Feldman or other abstention doctrines.

## III. Prosecutorial Misconduct and False Imprisonment

The recorded admissions of District Attorney Investigator Luis Pena provide irrefutable evidence of malicious prosecution and false imprisonment:

"I'm like, why are we even involved in this case? We don't take anything over 14.... your home schooling him, right?"

"The big question to me was why did we take this case anyways? It had nothing to do, but if the child was 14, was 15. It's like, why are we taking this?"

"Well just finish the damn warrant and don't worry about it.... You asked me not to reach out to him."

"if this goes to trial, you will likely win"

DDA Balerio then:

- Withheld her interview with my son showing his competence

- Suppressed the full FBI transcript disproving any "threat"

- Used manufactured threat to detain me 90 days without bail

- Coerced guilty plea through illegal detention

- Breached documented plea agreement regarding custody

- First Amendment Retaliation

- Systemic Pattern of Violations

- Independent Federal Claims

- Extrinsic Fraud Exception

- Pattern of Institutional Misconduct

## IV. First Amendment Retaliation and Protected Speech

The prosecution was explicitly retaliatory, as proven by DAI Pena's recorded admission that charges were brought because I had "pissed them off" by exposing misconduct. Under Hartman v. Moore, 547 U.S. 250 (2006), such retaliatory prosecution violates First Amendment rights.

Specific evidence demonstrates the retaliatory pattern:

- No criminal charges for over a year despite knowledge of my location

- Only prosecuted after filing public corruption complaints

- DAI Pena admitted "family court lawyers pushing for arrest"

- Used detention without bail to silence whistleblowing

- Coordinated action between family court and DA's office to punish protected speech


**V. Systemic Pattern of Constitutional Violations**

The evidence reveals a coordinated effort by state actors to deprive me of fundamental rights:

**1. Family Court Manipulation:**

- Ratekin announced intent to place my son in "facility" within minutes of taking case

- Ignored all professional opinions opposing facility placement

- Stripped parental rights without evidence of unfitness

- Made retaliatory supervised visitation order **after recusing**

- signed a judgement order **after recusing**

- Had undisclosed conflict through supervising judge's wife's relationship with my ex-wife

**2. Criminal Court Coordination:**

- Used manufactured "threat" to justify no bail detention

- DDA Balerio withheld exculpatory evidence

- DAI Pena admitted case had no merit

- Used detention to coerce plea deal

- Breached documented plea agreement


**3. Denial of Due Process:**

- No evidentiary hearing in four years

- Blocked all witnesses through motion in limine

- Denied ADA accommodations during medical crisis

- Entered default judgments during incapacity

- Judge Robinson playing "procedure games" to avoid addressing void orders and manifest injustice.


## VI. Independent Federal Claims Not Barred by Rooker-Feldman

My claims present independent constitutional violations not seeking review of state court judgments:

### 1. ADA Violations:

- Federal statutory rights independent of state proceedings

- Denial of reasonable accommodations violates federal law

- Not seeking review of state court judgments

- Pattern of discrimination against disability

- Violation of federal right of access to courts


### 2. Section 1983 Claims:

- Based on misconduct of state actors

- Independent of state court rulings

- Systemic pattern of rights violations

- Retaliation for protected speech

- Conspiracy between state actors and private parties


### 3. Extrinsic Fraud Exception:

- Recorded evidence proves fraud by prosecutors

- Concealment of exculpatory evidence

- Manufactured evidence for detention

- Coordinated misconduct by state actors

- Prevention of fair hearing through fraud

## VII. Ongoing Harm and Need for Federal Intervention

The constitutional violations continue to cause irreparable harm:

- Deprivation of parental rights without due process

- Enforcement of void orders from improper peremptory denial

- Ongoing retaliation for protected speech

- Use of criminal process to enforce void family court orders

- Systematic denial of hearings and evidence

This pattern of misconduct strikes at the heart of the judicial process. The extensive audio recordings, emails, court records, and other documentation provide irrefutable evidence that these are not frivolous claims but serious constitutional violations demanding federal court intervention.

As DAI Pena admitted on tape, this case "never should have been in criminal court." The prosecution was brought because I "pissed off" family court insiders by exposing their misconduct. The federal courts cannot allow such blatant retaliation against protected speech and systematic deprivation of fundamental rights to continue.

The evidence demonstrates that this appeal is far from frivolous - it presents documented constitutional violations supported by recordings, admissions, court records, and other concrete evidence that the lower courts have systematically refused to hear.

# Question 3: What do you think the court below did wrong? (You may, but need not, refer to cases and statutes.)

### I. Fundamental Misapplication of Rooker-Feldman Doctrine

The District Court fundamentally erred by applying Rooker-Feldman to bar claims that stem from independent constitutional violations rather than state court judgments. The court ignored crucial distinctions established in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005):

### A. Independent Constitutional Violations:

- ADA violations from denial of remote hearings during medical crisis

- First Amendment retaliation proven by DAI Pena's recorded admissions

- Due process violations from void orders after improper peremptory challenge

- False imprisonment through manufactured "threat" and coerced plea

### B. Extrinsic Fraud Exception:

- Recorded evidence proves prosecutors withheld exculpatory evidence

- DDA Balerio concealed interview with my son showing competence

- Suppression of full FBI transcript disproving alleged "threat"

- Misconduct prevented fair presentation of defense

### II. Failure to Address Void Orders from Improper Peremptory Challenge

*The court ignored a critical jurisdictional defect that renders subsequent orders void ab initio:*

### A. Timeline Establishing Void Orders:

- February 4, 2021: First hearing with Ratekin, no orders made or arguments heard

- February 8, 2021: Timely filed peremptory challenge

- Ratekin improperly denied challenge despite clear rules requiring grant

- All subsequent orders void under People v. Superior Court (Lavi)

**B. Cascading Constitutional Violations:**

- Judge Alksne's orders built on void foundation from Ratekin

- Criminal prosecution based on void custody orders

- No valid underlying order to support PC 278.5(a) charge

- Pattern of enforcing known void orders

## III. Disregard of Documented ADA Violations

*The court erroneously dismissed clear violations of federal disability law:*

A. Medical Documentation:

- Heart attack with 6% survival rate

- Multiple doctors' letters supporting accommodation

- Offered to have surgeon speak with court

- Standard remote practice during COVID period

**B. Systematic Denial of Access:**

- Blocked from four hearings and trial within month period

- Denied remote access standard during COVID

- Ignored California Rule of Court 3.1332 on medical continuances

- Granted motion in limine blocking all witnesses

- Entered defaults during documented incapacity

## IV. Failure to Address Prosecutorial Misconduct

The court ignored overwhelming evidence of prosecutorial misconduct:

A. DAI Pena's Recorded Admissions:

- "DA should never have taken this case"

- Prosecution because "pissed them off"

- Family court lawyers pressuring for arrest

- No credible basis for criminal charges

- Admission of retaliatory motive

**B. DDA Balerio's Constitutional Violations:**

- Withheld exculpatory interview with my son

- Suppressed full FBI transcript

- Used manufactured "threat" for 90-day detention

- Breached documented plea agreement

- Coordinated with family court insiders

**V. Disregard of First Amendment Retaliation**

*The court failed to address clear evidence of retaliatory prosecution:*

**A. Timeline Proving Retaliation:**

- No action for over year despite knowledge of location

- Only prosecuted after filing corruption complaints

- Used detention to silence whistleblowing

- Coordinated action between courts

- Pattern of institutional retaliation

**B. Documented Proof of Retaliation:**

- DAI Pena's admission of improper motive

- Family court lawyers "pressuring" DA

- Manufactured evidence for detention

- Used criminal process to enforce void orders

- Pattern of punishing protected speech

## VI. Systemic Pattern of Rights Violations

*The court ignored evidence of coordinated misconduct by state actors:*

### A. Family Court Manipulation:

- Ratekin's immediate "facility" threats without evidence

- Undisclosed conflict through supervising judge's wife

- Retaliatory orders after recusal

- Ignored professional opinions opposing facility

- Pattern of rights deprivation

### B. Criminal Court Coordination:

- Manufactured detention evidence

- Withheld exculpatory evidence

- Admitted lack of probable cause

- Coerced plea through detention

- Used criminal process to enforce void orders

## VII. Denial of Basic Due Process

*The court disregarded systematic denial of fair hearings:*

A. Pattern of Blocked Evidence:

- No evidentiary hearing in four years

- Motion in limine blocking all witnesses

- Denied access during medical crisis

- Refused to hear void order challenge

- Systematic obstruction of defense


**B. Judge Robinson's Procedural Games:**

- Claimed no jurisdiction over void orders

- Refused to hear emergency matters

- Misapplied filing deadlines

- Protected institutional misconduct

- Pattern of avoiding merits


The District Court's failure to address these serious constitutional violations, supported by extensive documentation and recordings, cannot be reconciled with its duty to protect fundamental rights. The evidence demonstrates not merely error, but a systemic pattern of misconduct that strikes at the heart of due process and demands federal intervention.

The court's failure to address void orders violates fundamental due process principles established in Mathews v. Eldridge, 424 U.S. 319 (1976). When Commissioner Ratekin improperly denied my peremptory challenge despite clear rules requiring grant, all subsequent orders became void under People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993). Yet incredibly, after recusing herself, Ratekin continued issuing orders:


- October 4, 2021: Recused due to "appearance of bias"

- Same day: Made retaliatory supervised visitation order

- October 5 & 15, 2021: Signed additional orders without jurisdiction


The ADA violations present independent federal claims entirely separate from state court judgments. The systematic denial of accommodations during a documented medical crisis violates Tennessee v. Lane, 541 U.S. 509 (2004) and Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001). The court's failure to recognize these as independent federal rights is reversible error.

**VIII. Systematic Obstruction of Evidence While Claiming Lack of Merit**

The District Court's dismissal of my claims while simultaneously blocking all procedural avenues to present evidence constitutes a form of fraud upon the court that demands appellate intervention. The court created an impossible catch-22 by:

**A. Systematic Denial of Pre-Trial Procedures:**

Refused to hold an evidentiary hearing despite extensive documentation

Denied request for early discovery of crucial evidence

Rejected motion for case management conference

Blocked all normal avenues for evidence development

**B. Use of Blocked Evidence to Justify Dismissal:**

Cited lack of developed evidence while preventing evidence presentation

Deemed claims meritless without allowing evidence to be heard

Used circular reasoning to justify dismissal

Created procedural trap preventing fair hearing

This circular obstruction violates fundamental principles of due process established in Mathews v. Eldridge, 424 U.S. 319 (1976), which requires a meaningful opportunity to present evidence. A court cannot legitimately deem claims meritless while actively preventing the presentation of evidence that would support those claims. As the Supreme Court emphasized in Armstrong v. Manzo, 380 U.S. 545 (1965), due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"

The systematic denial of normal pre-trial procedures while simultaneously citing lack of evidence demonstrates the court's dismissal was predetermined rather than based on proper consideration of the merits. This pattern of obstruction while claiming lack of merit is itself grounds for reversal, as it strikes at the heart of procedural fairness and meaningful access to justice. No court can fairly assess claims while actively blocking all avenues to present supporting evidence.

# Question 4: Why are these errors serious enough that this appeal should go forward?

The errors in my case are not mere technicalities or harmless oversights. They strike at the very core of the constitutional guarantees of due process, equal protection, and the First Amendment. They threaten the integrity of the judicial system and undermine the public's trust in the courts. If left uncorrected, these errors will not only perpetuate a grave injustice in my case but also erode the very foundations of our legal system.

## I. Fundamental Constitutional Rights at Stake

The errors below involve the systemic deprivation of my most basic constitutional rights. The improper denial of my peremptory challenge, the refusal to accommodate my disability, the retaliatory prosecution, and the denial of due process all violate bedrock principles of our legal system. As the Supreme Court has repeatedly emphasized, the right to a fair trial before an impartial tribunal is "a basic requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955). Likewise, the First Amendment's protection against retaliation for protected speech is "the essential foundation of our American system of government." BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524 (2002). These are not abstract principles but fundamental rights that must be vigorously defended, and their violation warrants immediate appellate review.

## II. Irreparable Harm and Ongoing Deprivations

The errors in my case have resulted in the ongoing deprivation of my parental rights, a "fundamental liberty interest" protected by the Due Process Clause. Troxel v. Granville, 530 U.S. 57, 65 (2000). The loss of these precious rights, based on void orders and a fundamentally unfair process, is an irreparable injury that continues every day the errors remain unremedied. As the Supreme Court has recognized, "the deprivation of constitutional rights unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). The ongoing nature of this harm, combined with the fundamental rights at stake, makes prompt appellate intervention imperative.

*The ongoing enforcement of void orders causes concrete irreparable harm daily:*

- Separation from my children without due process

- Inability to participate in educational decisions

- Professional licensure implications

- Continued enforcement of criminal judgment based on void orders

The recorded evidence proves the existence and breach of the plea agreement:

From 04/13/23 call with Andrea Schuck: "I agreed that I would all I said in the agreement was I would, I would entertain going back"

From 05/01/23 call with Jose Badillo: "The conversation we had with the DA that I explained to you, she's (schuck) on the record talking to the DA and I. That's why I am asking if you have those emails because if she's backtracking on that, obviously that could be an assistance for you in regard to whether you have a viable motion to withdraw your plea."

## III. Need to Correct Clear Legal Errors

The District Court's decision rests on clear legal errors that demand appellate correction. The misapplication of the Rooker-Feldman doctrine to bar my independent constitutional claims, the failure to address the void orders stemming from the improper peremptory challenge denial, the disregard of documented ADA violations, and the turning of a blind eye to prosecutorial misconduct all represent serious departures from well-established legal principles. As the Ninth Circuit has repeatedly emphasized, it has a "duty to correct errors of law where the substantial rights of the parties are concerned." United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009). These errors are not mere disagreements over factual findings but fundamental misapplications of the law that, if left uncorrected, will work a manifest injustice.

## IV. Systemic Implications and Public Trust

The errors in my case are not isolated incidents but rather emblematic of a deeper, systemic problem within the California judicial system. The coordinated misconduct by insiders across multiple branches of the system, the abuse of power to silence dissent, and the disregard for fundamental rights all point to a troubling pattern that threatens the very integrity of the courts. As the Supreme Court has cautioned, "the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part." Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 888 (2009). If such blatant abuses are allowed to stand, it will erode public confidence in the courts and create a two-tiered system of justice where insiders can manipulate the process with impunity. The federal courts have a vital role to play in checking such abuses and ensuring that the public can trust in the fairness and impartiality of the judicial system.

## V. Federal Courts as a Check on State Abuses

The federal courts serve as a crucial bulwark against state abuses and a vital safeguard for individual rights. As the Supreme Court has emphasized, the "very purpose of § 1983" is to "interpose the federal courts between the States and the people, as guardians of the people's federal rights." Mitchum v. Foster, 407 U.S. 225, 242 (1972). The errors in my case represent a systemic failure of the state courts to protect my constitutional rights and an abdication of their responsibility to ensure due process and equal justice under law. In such circumstances, federal intervention is not only appropriate but essential to vindicate my rights and uphold the supremacy of the Constitution. By abstaining in the face of such serious allegations, the federal courts would be abdicating their solemn duty and leaving victims of state abuse without recourse.

## VI. Opportunity to Set Important Precedent

My case presents an opportunity for the Ninth Circuit to reaffirm the vital role of the federal courts in safeguarding individual rights and the rule of law. By correcting the errors below and allowing my claims to proceed, the court can send a powerful message that misconduct and abuse of power will not be tolerated, no matter how entrenched the interests or how powerful the actors. It can set important precedent that will guide lower courts and deter future abuses. As the Supreme Court has recognized, the "moral authority" of the courts depends on their ability to "protect the powerless" and "provide equal justice under law." Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1726 (2020). By taking up my case, the Ninth Circuit can reaffirm these core values and demonstrate that the federal courts remain a bastion of liberty and a check on arbitrary power.

In conclusion, the errors in my case are not minor or technical flaws but fundamental violations of the most basic guarantees of our Constitution. They have resulted in the ongoing deprivation of my parental rights, the suppression of my protected speech, and the denial of my right to a fair trial. They reflect a systemic problem of abuse and misconduct that threatens the very legitimacy of the judicial system. If left uncorrected, these errors will not only perpetuate a grave injustice in my case but also erode the foundations of our legal order.

The Ninth Circuit has a historic opportunity to correct these errors, vindicate my rights, and reaffirm the vital role of the federal courts in safeguarding liberty and ensuring equal justice under law. By allowing my appeal to go forward, the court can send a powerful message that the Constitution remains the supreme law of the land and that the federal courts will not hesitate to intervene when state actors abuse their power and trample on individual rights.

The stakes in this case could not be higher, and the need for appellate review could not be more urgent. The integrity of our judicial system, the supremacy of our Constitution, and the very notion of equal justice under law hang in the balance. I implore the court to rise to this moment, to correct the grave errors below, and to ensure that the promises of our founding documents remain a reality for all Americans, regardless of their power or position. Justice demands nothing less.

# 5. ADDITIONAL INFORMATION

**INTRODUCTION:**

The District Court's denial of my motion for reconsideration fundamentally misapprehends both the nature of the constitutional violations and the scope of available relief. Most critically, the court erred in:

Characterizing the audio recordings of DAI Pena and DDA Balerio's misconduct as merely challenging state court rulings rather than establishing independent constitutional violations;

Failing to recognize that the improper denial of my February 8, 2021 peremptory challenge renders subsequent orders void ab initio under People v. Superior Court (Lavi);

Dismissing clear ADA violations despite documented medical necessity after a life-threatening heart attack with only 6% survival rate;

Disregarding the extrinsic fraud exception to Rooker-Feldman where recorded evidence proves prosecutors prevented fair presentation of my defense;

Refusing to acknowledge that the retaliatory prosecution, proven through DAI Pena's recorded admission that charges were brought because I 'pissed them off,' presents an independent basis for federal jurisdiction.

In light of the District Court's orders dismissing my lawsuit and denying relief from judgment, I respectfully submit this additional information to demonstrate the serious errors in the court's reasoning and the need for appellate review.

**Rooker-Feldman Doctrine:**

The District Court fundamentally misapplied the Rooker-Feldman doctrine to bar my claims. As the Supreme Court clarified in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), Rooker-Feldman is a narrow doctrine confined to cases where the plaintiff seeks redress for an injury caused by the state court judgment itself. My core injuries stem from the defendants' unconstitutional actions, not the state court judgments, which are merely a consequence of the underlying violations.

Moreover, the "extrinsic fraud" exception to Rooker-Feldman, recognized in cases like Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004), applies here. The recorded admissions by DAI Pena and the concealed plea deal evidence fraud by the prosecutor that hindered my ability to present my case in state court. Additionally, my federal claims provide an independent basis for jurisdiction irrespective of the state court rulings, as established in Skinner v. Switzer, 562 U.S. 521 (2011).

**Failure to State a Claim Against DDA Balerio:**

The court erred in finding that I failed to state a claim against DDA Balerio. Balerio's alleged breach of the plea agreement violates due process under Santobello v. New York, 404 U.S. 257 (1971). The recorded conversations document the plea deal's existence and terms, which Balerio breached in coordination with my ex-wife.

Furthermore, Balerio's Brady violations in withholding exculpatory evidence, such as the FBI threat assessment and interview with my son, support a due process claim under Brady v. Maryland, 373 U.S. 83 (1963). Her use of the criminal process to retaliate against me for filing complaints and to assist family court insiders states a claim for retaliatory prosecution under Hartman v. Moore, 547 U.S. 250 (2006).

**State Action by Badillo, Schuck, and Other Private Parties:**

The court failed to recognize that private parties can be liable under § 1983 when they conspire or jointly participate with state actors to deprive constitutional rights, as held in Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). My complaint alleges that Badillo, Schuck, and others jointly engaged with Balerio and state officials in a conspiracy to deprive me of due process and breach the plea deal, clothing them in state authority for § 1983 purposes.

**Availability of Relief:**

Although specific performance of the custody agreement may not be available, the court can still provide a remedy for the constitutional violations, including plea withdrawal and damages, as recognized in Buckley v. Terhune, 441 F.3d 688 (9th Cir. 2006). Federal courts can grant declaratory and prospective relief in § 1983 actions to address ongoing violations, even if arising from state proceedings, as established in Wooley v. Maynard, 430 U.S. 705 (1977).

**Younger Abstention:**

The court improperly invoked Younger abstention. The evidence of retaliatory prosecution, abuse of process, and collaboration with the family court demonstrates bad faith and harassment, making Younger inapplicable under Cullen v. Fliegner, 18 F.3d 96 (2d Cir. 1994). The allegations of systemic bias and denial of due process suggest the state proceedings cannot adequately protect my rights, warranting federal intervention, as held in Gerstein v. Pugh, 420 U.S. 103 (1975).

**IFP Status:**

The court's cursory denial of IFP status fails to address the substantial arguments and evidence supporting my constitutional claims. The extensive allegations of misconduct, recorded admissions, and evidence of bias and due process violations demonstrate the viability of my claims, which are not precluded by Rooker-Feldman for the reasons stated above.

**Overarching Themes:**

**Fraud on the Court:**

The collusion between prosecutors, private counsel, and the family court to fabricate charges, suppress evidence, and manipulate proceedings amounts to a fraud on the court – "a deliberate scheme to directly subvert the judicial process" that warrants immediate correction, as recognized in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

**Fundamental Rights at Stake:**

The continued deprivation of my parental rights, a "fundamental liberty interest" under Troxel v. Granville, 530 U.S. 57 (2000), based on alleged fraud and constitutional violations, represents an ongoing affront to my core rights. The alleged retaliation for protected speech also directly assaults essential First Amendment protections, as emphasized in BE & K Constr. Co. v. NLRB, 536 U.S. 516 (2002).

**Severity and Ongoing Nature of Harm:**

The loss of fundamental freedoms inflicts irreparable injury warranting immediate relief, as recognized in Elrod v. Burns, 427 U.S. 347 (1976). The court has an obligation to promptly address credible claims of ongoing constitutional harm, particularly involving parental rights, as held in Malik v. Arapahoe Cty. Dep't of Soc. Servs., 191 F.3d 1306 (10th Cir. 1999).

**Systemic Implications:**

The allegations of concerted misconduct by state actors suggest a systemic problem that threatens public faith in the judicial process, as cautioned in Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009). Federal courts have a vital role in addressing unconstitutional patterns of conduct by state officials and providing a bulwark against encroachments on fundamental rights, as emphasized in Mitchum v. Foster, 407 U.S. 225 (1972).

In conclusion, the District Court's dismissal and denial of relief fail to appreciate the gravity of my constitutional claims, the substantial supporting evidence, and the profound implications for the integrity of the judicial system. The narrow view of jurisdiction and remedies ignores the federal courts' essential role in addressing ongoing constitutional violations and checking abuses of state power.

The alleged collusion between prosecutors, private actors, and the family court to subvert justice and trample fundamental rights represents a direct assault on the rule of law that demands prompt federal intervention. The evidence of fraud on the court, the severity and ongoing nature of the deprivations, and the systemic scope of the misconduct all compel the conclusion that the District Court erred in dismissing my case and denying relief.

I respectfully urge the Ninth Circuit to fulfill its vital role in upholding the Constitution, vindicating fundamental rights, and ensuring the integrity of the judicial process by reversing the District Court's decision and allowing my claims to proceed. To abstain in the face of such serious allegations would be to risk complicity in the very injustices the federal courts are duty-bound to prevent.

**Violation of the Americans with Disabilities Act (ADA):**

The District Court completely failed to address my claims under the Americans with Disabilities Act (ADA). As established in Tennessee v. Lane, 541 U.S. 509 (2004), the ADA applies to state court proceedings and requires the provision of reasonable accommodations to ensure equal access to justice. The court's denial of my requests for remote appearance and other accommodations during my medical crisis directly violates the ADA and denies me equal protection under the law.

The ADA claims are entirely independent of the state court judgments and are not barred by Rooker-Feldman or any other abstention doctrine. The District Court's failure to consider these claims is a clear error that demands appellate review. The court cannot simply ignore a federal statute designed to protect the rights of individuals with disabilities and ensure their full and equal participation in the judicial process.

**Fraud on the Court:**

The District Court also failed to appreciate the gravity of the fraud on the court that has infected these proceedings from the outset. As recognized in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), fraud on the court is a most egregious offense that undermines the very integrity of the judicial process and warrants immediate correction.

The alleged collusion between the prosecutors, private counsel, and the family court to fabricate charges, suppress evidence, and manipulate the proceedings to strip me of my fundamental rights, despite knowing the lack of merit in their claims, amounts to a deliberate scheme to subvert justice. This is precisely the type of fraud on the court that the federal courts have a duty to confront and remedy.

Rooker-Feldman and other abstention doctrines cannot be used to shield such blatant misconduct from federal review. When the very integrity of the state proceedings is called into question by credible allegations of fraud and collusion, the federal courts have an obligation to intervene to protect the due process rights of litigants and maintain public trust in the judicial system.

**Improper Denial of Peremptory Challenge:**

At the heart of this legal fiasco lies Commissioner Ratekin's improper denial of my valid peremptory challenge, which violated my fundamental right to a fair and impartial tribunal. This error alone should unravel all the subsequent family and criminal court proceedings, as it undermines the very foundation of due process.

The District Court's failure to recognize the significance of this error and its taint on the entire proceedings is a glaring omission. The right to a fair and unbiased judge is essential to the legitimacy of any judicial process, and its denial cannot be tolerated. The appearance of a rigged system, where insiders protect each other at the expense of litigants' rights, is antithetical to the principles of justice and equality under the law.

The fact that this clear violation has been allowed to stand, and that the subsequent proceedings have been allowed to continue as if nothing was amiss, raises serious questions about the integrity of the system and the commitment to fundamental fairness. The federal courts have a duty to intervene when state proceedings are conducted in such a manner as to deprive litigants of their basic due process rights.

**Systemic Implications and the Need for Federal Intervention:**

The District Court's dismissal of my case and denial of relief send a troubling message that federal courts will turn a blind eye to even the most egregious abuses by state actors, leaving litigants at the mercy of a system that appears rigged against them. This is not the role of the federal judiciary as envisioned by our Constitution and laws.

The allegations in my case, supported by substantial evidence, point to a deeply troubling pattern of misconduct and abuse of power by state officials across multiple branches of the justice system. Left unchecked, such conduct erodes public confidence in the courts and undermines the very foundations of the rule of law.

The federal courts have a solemn duty to enforce federal constitutional and statutory rights, and to provide a check against abuses by state actors. Abstention in the face of such serious allegations of systemic misconduct is not an option – it is an abdication of judicial responsibility.

My case presents an opportunity for the federal courts to send a clear message that fraud, collusion, and disregard for fundamental rights will not be tolerated in our justice system, no matter how powerful or entrenched the perpetrators may be. It is a chance to reaffirm the vital role of the federal judiciary in safeguarding the rights and liberties of all citizens, and in ensuring that the promise of equal justice under law is not an empty platitude but a living reality.

In conclusion, the District Court's failure to address the ADA violations, fraud on the court, and the improper denial of my peremptory challenge represents a fundamental miscarriage of justice. These issues, along with the ongoing deprivation of my parental rights and the chilling of my free speech, demand immediate federal intervention.

The Ninth Circuit has an opportunity to correct these errors, vindicate fundamental rights, and send a resounding message that abuses of power and disregard for the rule of law will not be tolerated in our judicial system. The stakes could not be higher – the very integrity of our courts and the trust of the public hang in the balance.

I implore the Court to rise to this challenge, to fulfill its constitutional duty, and to provide the check and balance against state abuse that is the hallmark of our federal system. The time for justice is now, and the responsibility lies with this Court to ensure that it is done. The eyes of the nation are watching, and the future of our judicial system depends on the outcome of this case.

**Ninth Circuit Intervention and Welched Plea Deals:**

The Ninth Circuit has repeatedly had to intervene and admonish the United States District Court for the Southern District of California for failing to properly consider evidence and address serious constitutional violations. Cases like United States v. Olsen, 995 F.3d 683 (9th Cir. 2021), Hernandez v. Chappell, 923 F.3d 544 (9th Cir. 2019), and Silva v. Brown, 416 F.3d 980 (9th Cir. 2005) demonstrate the Ninth Circuit's commitment to ensuring that defendants' rights are protected and that lower courts fulfill their obligation to consider all relevant evidence and arguments.

This history of intervention is particularly relevant in my case, where the District Court has refused to consider the audio recordings that provide strong support for my claims of a breached plea agreement and prosecutorial misconduct. The Ninth Circuit has made clear that defendants are entitled to an evidentiary hearing when they can show that an oral plea agreement was made and that they relied on the prosecutor's promises to their detriment. United States v. Krasn, 614 F.2d 1229 (9th Cir. 1980). The recordings of my attorney and the DA investigator confirm the existence of a plea deal that was breached and reveal serious misconduct by the prosecutor. The District Court's refusal to consider this evidence is a clear violation of my rights and a continuation of the pattern of disregard for defendants' constitutional protections that the Ninth Circuit has had to address in the past.

Moreover, the Ninth Circuit has consistently recognized the importance of enforcing plea agreements, even when they are not in writing. In United States v. Savage, 978 F.2d 1136 (9th Cir. 1992), the court held that an oral plea agreement can be enforced if the defendant can prove that a promise was made and that he relied on that promise to his detriment. The recording of my attorney acknowledging the terms of the plea deal and my reliance on those promises is precisely the kind of evidence that the Ninth Circuit has found sufficient to warrant enforcement of an oral agreement. The District Court's failure to consider this evidence and to provide a remedy for the breach of the plea deal is a clear departure from the principles established in Savage and other Ninth Circuit cases. It is a fundamental violation of my rights and a threat to the integrity of the plea bargaining process that is central to our criminal justice system.

The District Court's refusal to consider the overwhelming evidence of a breached plea deal and prosecutorial misconduct in my case is not an isolated occurrence. It is part of a disturbing pattern of disregard for defendants' rights that the Ninth Circuit has had to address repeatedly. The court's failure to act on the recorded evidence in my case is a clear abdication of its responsibility to ensure that justice is done and that the Constitution is upheld. It is time for the Ninth Circuit to intervene once again, to enforce the principles it has established in cases like Savage and Krasn, and to send a clear message that such violations of defendants' rights will not be tolerated. The integrity of our system of justice depends on it.

Judge Robinson's procedural manipulation exemplifies the systematic obstruction of justice:

- Claimed no jurisdiction over void orders despite clear authority

- Refused to hear emergency matters involving child safety

- Misapplied CCP 473(b) filing deadlines to avoid addressing merits

- Protected institutional misconduct through procedural barriers


*In four years, no court has granted an evidentiary hearing despite:*

- Recorded admissions by prosecutors

- Documentation of ADA violations

- Clear evidence of void orders

- Proof of extrinsic fraud


*The coordination between family court insiders and prosecutors is proven through:*

- DAI Pena's admission of pressure from family court lawyers

- Use of manufactured "threat" to enforce void orders

- Withholding of exculpatory evidence to maintain void custody orders

- Pattern of retaliation for exposing misconduct


Judge Alksne's motion in limine blocking all witnesses and evidence demonstrates the lengths taken to prevent the truth from emerging. This systematic denial of basic due process cannot be reconciled with fundamental fairness or the appearance of justice.


**CONCLUSION:**

"The District Court's denial of reconsideration perpetuates a manifest injustice that strikes at the heart of our judicial system. The evidence of misconduct is not merely allegations - it is captured in recordings, documented in emails, and proven through court records that have never been heard due to the systematic denial of evidentiary hearings for over four years.

Most fundamentally, this case exposes how family court insiders can weaponize the criminal justice system to retaliate against parents who challenge their misconduct. DAI Pena's recorded admission that I was prosecuted for 'pissing off' court insiders by exposing corruption proves this is not speculation but documented fact.

The court's refusal to consider this evidence and to provide a remedy for these constitutional violations cannot stand. To deny reconsideration is to sanction:

The use of manufactured pretrial detention to coerce pleas

The withholding of exculpatory evidence

Retaliation against whistleblowers

The systematic denial of basic due process

The transformation of judicial proceedings into what the Supreme Court explicitly warned against in Brookhart v. Janis: a 'sham' that 'would not comport with constitutional guarantees.'

Justice, the rule of law, and the integrity of our judicial system demand this Court reverse the denial of reconsideration. The evidence is too substantial, the violations too serious, and the implications too far-reaching to allow these constitutional injuries to go unaddressed.


Respectfully,


Rob Emert

11/27/24